## M. MARIGNY, for the use, etc., v. HOME MUTUAL INSURANCE Co.

Under a clause in a policy of insurance, effected upon a vessel for the benefit of the owner, that it should become void upon assignment thereof, transfer of interest or change of command—*Held :* That the seizure of the vessel by the Sheriff at the suit of a creditor, would not have the effect of avoiding the policy.

Nor could the policy be avoided where the assured agreed "that the vessel should, during the continuance of the policy, be completely found with master, officers and crew, on the ground that she was not so found while laid up under seizure.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J. *Benjamin, Bradford & Finney* and C. A. *Taylor*, for plaintiff and appellant. L. *Hunton* and *Singleton & Clack*, for defendant.

BUCHANAN, J. On the 10th May, 1855, *Thomas Keefe*, for the account of the owners of the steamboat S. F. J. Trabue, effected an insurance with defendants in the sum of five thousand dollars, loss, if any, payable to plaintiff, upon the hull, engine, furniture and appurtenances of said steamboat, valued at $35,000, to navigate the Mississippi river, not above Alton, and on the Ohio river, not above Louisville, for one year from date of insurance. Before the expiration of the risk, the steamboat Trabue was seized for debt ; and while in the custody of the Sheriff, in the port of New Orleans, was totally destroyed by fire, being one of the perils insured against, on the 19th April, 1856.

The defendants being sued on the policy, plead in defence :

1st. That while the policy sued upon was running and unexpired, other insurance was effected on said boat in the Crescent Mutual Insurance Company for $22,500, which, together with the amount insured by defendants, exceeded the sum of $25,000 ; whereby the policy sued upon became null and void, by the terms thereof.

2d. That in consequence of the seizure made by the Sheriff, the command of the boat was taken from the master thereof, without the consent or approbation

of defendants, which was a change in the command thereof, whereby the policy became null and void by its terms.

3d. That there was no commander in charge of the steamboat Trabue, and that no person was on her at the time she took fire and was destroyed : whereby defendant was released from liability.

4th. (By a supplemental answer.) That at the time of the alleged loss, the Trabue was not competently provided with master, officers and crew, and was not sufficiently provided with tackle and appurtenances, as stipulated in the policy.

1. The policy sued on contains the following clause :

" And it is hereby further agreed, that this policy shall become void upon assignment thereof, transfer of interest, or change of command, or if any other insurance be made upon the interest hereby insured, which, together with this insurance, shall exceed $25,000, unless the consent of this company thereto be obtained and endorsed thereon."

It appears that the boat, having been subsequently seized by the Sheriff, *John M. Bell*, a policy of insurance was effected by him, in his official capacity, with the Crescent Mutual Insurance Company, in the sum of $22,500, to cover a harbor risk, in the port of New Orleans, for one month, viz :..from 2d April, 1856, to 2d May, 1856.

*Mr. Blossman*, the Deputy Sheriff, states, that " this policy was taken out upon the notification of *Mr. Shannon*, who was the second seizing creditor ; that he wished the Sheriff to effect insurance upon the boat for his protection ; and witness and *Mr. Bell* made a calculation of the claims against the Trabue, and *Mr. Bell* thereupon took out the policy for $22,500."

*Mr. Bell* himself states that he did not effect the insurance at the request of the owner of the boat ; nor even, so far as he knows, with the knowledge of the owner.

From this evidence it appears that the insurance in the Crescent office was not effected upon the same interest which was insured by defendants, namely, the interest of the owners of the boat, who were defendants in the seizure. This insurance did not, therefore, fall within the prohibitory clause of defendant's policy above quoted.

2. It is next contended that the command of the boat was changed by the effect of the seizure made by the Sheriff. This appears to us a very strained construction of the clause in the policy referred to. The meaning and intention of the parties to the insurance evidently was, that the assured, the owners of the Trabue, should only employ in the navigation of their vessel, as master, a person known to and who possessed the confidence of the underwriters. For this reason the name of the commander, at the date of the policy, is expressed therein. We find by an endorsement on the back of the policy, that another person named had been substituted to the original master, with the consent of the defendants ; and this new master appears to have been both commander and owner at the time of the seizure. The custody of the boat devolved upon the Sheriff, by the fact of seizure and so long as the seizure continued ; because that officer was responsible that the boat should not be removed beyond the jurisdiction of the court in which the seizure was made. But this very responsibility excludes the idea of the " command " of the boat being in the Sheriff, in the sense of the policy. For it was evidently impossible that the Sheriff should navigate the Mississippi as high as Alton, or the Ohio as high as Louisville, with the boat in his charge. *Captain White* was no less commander of the Trabue, on account of the seizure made by

MARIGNY
e.
HOME MU. INS. CO.
the Sheriff; and he could, at any moment, have put an end to that seizure by satisfying the claims for which the boat was seized. The right of a creditor to seize a vessel is a right secured and regulated by law. We have been referred to no authority for the doctrine that the exercise of this legal right avoided an insurance upon the vessel, effected for the benefit of the owner.

The 3d and 4th pleas are substantially the same. They amount to a denial of seaworthiness, by reason of there not being a crew on board at the time of the fire : and are based upon the clause of the policy by which the assured agrees "that the boat aforesaid is and shall be, during the continuance of this policy, sufficiently found in tackle and appurtenances thereto, and competently provided with master, officers and crew.

This clause is of universal use in marine policies. Its effect upon the condition of a boat, laid up under seizure, in the port of New Orleans, was considered in the case of *Bell* v. *The Western Marine and Fire Insurance Company*, 5th Rob. 446. The court said : "When engaged on a voyage, or lying in port receiving and discharging cargo, it is proper that a boat should be properly officered and manned ; but when *laid up*, it is not shown to be necessary or usual."

The judgment of the District Court is, therefore, reversed ; and it is adjudged and decreed, that plaintiff and appellant recover of defendants and appellees five thousand dollars, with legal interest from the 19th June, 1856, until paid, and costs in both courts.